OPINION

PER CURIAM.
The primary issue in this appeal is whether the warrantless seizure of cocaine from the defendant’s person during a detention and frisk was constitutionally permissible under the “plain feel” or “plain touch” doctrine expounded in Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). In this case, the trial court denied the defendant’s motion to suppress, and thereafter, the defendant pled guilty to possession of cocaine with intent to sell, but reserved the right to appeal the constitutionality of the warrantless seizure pursuant to Tenn. R.Crim. P. 37(b)(2).[1] The Court of Criminal Appeals affirmed the trial court’s denial of the motion to suppress. Thereafter, we granted permission to appeal.
A majority of this Court has determined that the initial stop and frisk was based upon reasonable suspicion supported by specific and articulable facts. However, a majority of this Court has also concluded that the evidence preponderates against the trial court’s finding that the officer had probable cause to believe the object felt during the frisk was contraband. Consequently, the judgment of the Court of Criminal Appeals upholding the trial court’s denial of the motion to suppress is reversed. The defendant’s conviction is vacated, and the charge is dismissed.

BACKGROUND

The proof at the suppression hearing showed that at 2:47 p.m. on December 23, 1993, Officer D.W. Blackwell of the Paris Police Department had a phone conversation with a confidential informant who had provided reliable information in the past leading to a conviction on a cocaine charge. According to the informant, the defendant, Ray Anthony Bridges, was selling crack cocaine “right then” at a club called “Preacher’s.” The informant further said that Bridges, was carrying cash and drugs on his person. Officer Blackwell had previously received “half a dozen or so” tips regarding the defendant’s dealing crack cocaine in that area. Officer Blackwell proceeded to Preacher’s, arrived approximately thirty minutes later at 3:21 p.m., and found Bridges sitting at a table inside Preachers engaged in conversation. Aware that Bridges previously had been convicted of felony assault and recently had been involved in an armed altercation with police, Officer Blackwell identified himself and ordered Bridges to stand against the wall. Officer Blackwell then patted down the outside of Bridges clothing to ensure he was not carrying weapons. During the patdown, Officer Blackwell felt a small object “in the shape of a pill bottle” in the defendant’s right jacket pocket and, recognized it as “the kind that a lot of other crack dealers will use to keep their crack in.” Officer Blackwell seized the bottle, and upon inspection, determined that it contained crack cocaine, and he also found a knife in the defendant’s right pants pocket. As a result, Bridges was arrested, and a further search was conducted of the defendant’s person, during which Officer Blackwell discovered a plastic bag of cocaine “in the same pocket” from which the pill bottle containing crack had been removed.
The trial court denied the defendant’s pretrial motion to suppress the evidence, and, upon appeal, the Court of Criminal Appeals affirmed the denial. For the reasons hereafter explained, a majority of this Court now concludes that seizure of the pill bottle violat *490 ed the defendant’s constitutional rights. Accordingly, the judgment of the Court of Criminal Appeals upholding the trial court’s denial of the motion to suppress is reversed.

STANDARD OF REVIEW

This case involves the review of a trial court’s findings of fact and law in disposing of a motion to suppress. In State v. Odom, 928 S.W.2d 18 (Tenn.1996), this Court clarified the standard to be applied by an appellate court when reviewing a trial court’s findings of fact on suppression issues.
Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court’s findings, those findings shall be upheld. In other words, a trial court’s findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.
Id. at 18. However, the application of the law to the facts found by the trial court is a question of law which this Court reviews de novo. State v. Yeargan, 958 S.W.2d 626, 629 (Tenn.1997).

CONSTITUTIONAL PROVISIONS

We begin our analysis of the issue in this appeal with the text of the applicable constitutional provisions. The Fourth Amendment[2] to the United States Constitution provides:
Unreasonable searches and seizures.— The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
Similarly, Article 1, Section 7 of the Constitution of Tennessee guarantees
that the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.
The purpose of the prohibition against unreasonable searches and seizures under the Fourth Amendment is to “safeguard the privacy and security of individuals against arbitrary invasions of government officials.” Camara v. Municipal Court, 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967). “[Ajrticle I, section 7 is identical in intent and purpose with the Fourth Amendment.” State v. Downey, 945 S.W.2d 102, 106 (Tenn.1997), quoting Sneed v. State, 221 Tenn. 6, 13, 423 S.W.2d 857, 860 (1968).
Consequently, under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564 (1971); State v. Bartram, 925 S.W.2d 227, 229-30 (Tenn.1996).
The defendant contends that no exceptions to the warrant requirement are applicable in this ease and that Officer Blackwell had no right to detain or search him. The State, on the other hand, argues that Officer Blackwell had probable cause to arrest the defendant and that the search of the defendant’s person was permissible as a search incident to an arrest, an exception to the warrant requirement. Alternatively, the State contends that the initial detention and patdown search *491 were valid as a stop and frisk under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and the seizure of the evidence permissible under the plain touch doctrine.

SEARCH INCIDENT TO A LAWFUL ARREST

Because a search incident to a lawful arrest is an exception to the warrant requirement which would independently support the warrantless search of the defendant’s person and seizure of the pill bottle, we first determine whether the search and seizure in this case was pursuant to a lawfiil arrest. See Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969); State v. Marshall, 870 S.W.2d 532, 540 (Tenn.Crim.App.1993).
Both the Fourth Amendment and Article I, Section 7, require the existence of “probable cause” for making an arrest without a warrant. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); State v. Jacumin, 778 S.W.2d 430, 431 (Tenn.1989); see also Tenn.Code Ann. § 40-7-103(a)(officers may make a warrantless arrest when they have probable cause to believe that the arrestee has committed or is committing a felony). Probable cause for an arrest without a warrant exists if, at the time of the arrest, the facts and circumstances within the knowledge of the officers, and of which they had reasonably trustworthy information, are “sufficient to warrant a prudent man in believing that the [defendant] had committed or was committing an offense.” Beck, 379 U.S. at 91, 85 S.Ct. at 225; State v. Melson, 638 S.W.2d 342, 350 (Tenn.1982). In addition, before a finding of probable cause may be based upon an informant’s tip, the basis of the informant’s knowledge and the informant’s credibility must also be established. State v. Jacumin, 778 S.W.2d 430, 432-436 (Tenn.1989). In this case, the officer acted in response to a informant’s tip; therefore we must apply the two-pronged test to evaluate the reliability of the tip.
In the present case the informant who provided the tip about the defendant’s criminal activity had assisted Officer Blackwell on a case approximately eight years earlier in which an arrest and conviction were made on a cocaine charge. Blackwell had known this informant for a number of years and said this informant had “always been very straightforward and very honest and very reliable” with him. These facts minimally satisfy the credibility prong of the Jacumin test.
However, the evidence is deficient as to the second prong of Jacumin. In other words, there is no evidence of the basis of the informant’s knowledge, that is, how the informant knew that Bridges was at Preacher’s selling cocaine. Nonetheless, where a tip fails under either or both of the two prongs, probable cause may still be established by independent police investigative work that corroborates the tip to such an extent that it supports the inference that the informant was reliable and that the informant made the charge on the basis of information obtained in a reliable way. See Spinelli v. United States, 393 U.S. 410, 417-18, 89 S.Ct. 584, 589-90, 21 L.Ed.2d 637 (1969); Jacumin, 778 S.W.2d at 436. Here, the State argues that the tip was sufficiently corroborated to overcome any deficiency. First, the State points out that Officer Blackwell had received a half dozen prior tips that the defendant had engaged in similar illegal activity at this specific location. Second, the State argues that Blackwell knew that the defendant was a convicted drug dealer. Third, the State argues that Officer Blackwell found the defendant at Preacher’s exactly as the informant had said he would be soon after Blackwell received the tip. These facts, however, are insufficient corroboration to allow an arrest under the circumstances of this case.
A police officer’s knowledge of a suspect’s reputation is not alone enough to constitute probable cause to arrest. State v. Kimbro, 197 Conn. 219, 496 A.2d 498, 505 (1985). “Something more substantial than a casual rumor ... or an accusation based merely on an individual’s general reputation” should be shown. Spinelli, 393 U.S. at 416, 89 S.Ct. at 589. In the present case, the only fact given by the informant corroborated by police investigation, other than defendant’s reputation, was that the defendant was present at Preacher’s place. While this fact may indicate that the basis of the informant’s knowledge was eyewitness observation, this *492 corroboration is insufficient to establish the reliability of the informant’s tip and therefore, probable cause.
The State has failed to establish that the information possessed by Officer Blackwell at the time he confronted the defendant was sufficient to establish probable cause for a warrantless arrest of the defendant; therefore, the ensuing search of the defendant’s person cannot be validated as a search incident to a lawful arrest as the State argues. We must next determine whether the initial detention and frisk was valid under Terry.

REASONABLE SUSPICION

It is well-established that a police officer may make an investigatory stop when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed. Terry, 392 U.S. at 21, 88 S.Ct. at 1880; Yeargan, 958 S.W.2d at 630; State v. Watkins, 827 S.W.2d 293, 294 (Tenn.1992). Likewise, a frisk is warranted under Terry if the police officer has a reasonable suspicion based on specific and articulable facts that the suspect is armed. Id., 392 U.S. at 27, 88 S.Ct. at 1883.
As the United States Supreme Court recognized in Alabama v. White, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990):
[reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.
(Emphasis added.)
In determining whether a police officer’s reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981). This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. Id., 449 U.S. at 418, 101 S.Ct. at 694, 66 L.Ed.2d at 629. A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. Terry, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.
Watkins, 827 S.W.2d at 294.
In this case, the officer’s decision to initiate an investigatory stop and frisk of the defendant was based upon 1) information obtained from a confidential informant who had provided reliable information in the past, 2) “half a dozen or so” other tips regarding Bridges dealing drugs in the same area, and 3) the officer’s own observation of Bridges at the location which had been designated by the informant only thirty minutes earlier. The informant’s tip did not strictly satisfy the basis of knowledge portion of the two-prong test of reliability under Jacumin, 778 S.W.2d at 436, and was insufficient to support a finding of probable cause. However, the tip, in conjunction with Officer Blackwell’s independent corroboration, was sufficiently reliable to provide reasonable suspicion.
An investigative stop may be based on the tip of an informant if the information manifests “enough indicia of reliability” to justify the stop. State v. Pulley, 863 S.W.2d 29, 31 (Tenn.1993); Adams v. Williams, 407 U.S. 143, 146-147, 92 S.Ct. 1921, 1923-1924, 32 L.Ed.2d 612 (1972). When an informant reports an incident at or near the time of its occurrence, a court can often assume that the report is first hand and thus reliable. Pulley, 863 S.W.2d at 32. Furthermore, a hurried description from a source who insists on immediate action suggesting the source is an eyewitness is sufficient for further investigation. Lawson v. United States, 360 A.2d 38, 40 (D.C.App.1976). In the present case Officer Blackwell was told by the informant that the defendant was at “Preacher’s” selling “crack cocaine right then,” and that Bridges was carrying the drug on his person. Very soon after receiving the tip, Officer Blackwell found the defendant at “Preacher’s,” where the infor *493 mant had told him the defendant would be. Officer Blackwell previously had received tips from other persons indicating that Bridges routinely sold crack cocaine in that area. The corroboration of the tip, indicating an eye-witness basis of knowledge, and the informant’s demonstrated past credibility are sufficient to satisfy the two-pronged test of reliability. In addition, these “specific and articulable facts” are sufficient to support a finding of reasonable suspicion justifying the investigatory stop under Terry.
Once a valid stop has been made, police may pat a suspect’s outer clothing if the police have a reasonable, particularized suspicion that the suspect is armed. Terry, 392 U.S. at 27, 88 S.Ct. at 1883; Hughes v. State, 588 S.W.2d 296, 304 (Tenn.1979). “The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.” Adams, 407 U.S. at 146, 92 S.Ct. at 1923. Officer Blackwell knew that Bridges was a convicted felon and drug dealer who had recently been charged with a violent offense involving a weapon. In addition, Officer Blackwell was familiar with the defendant’s armed attempt to flee police. This knowledge provided a reasonable, particularized suspicion that the defendant was armed and dangerous. For the protection of himself and others in the area, therefore, Officer Blackwell was entitled to conduct a carefully limited search of the outer clothing of the defendant in an attempt to discover weapons that might be used to assault him. See Terry, 392 U.S. at 30, 88 S.Ct. at 1884-1885. Accordingly, a majority of this Court holds that the “stop and frisk” of Bridges was justified under Terry. Having so determined, we must next consider the legality of the seizure of the pill bottle containing cocaine.

PLAIN FEEL DOCTRINE

In Minnesota v. Dickerson, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), the United States Supreme Court held that if an officer detects contraband through the sense of touch during a valid Terry frisk, the officer may seize the contraband. In that case, two police officers observed Dickerson leaving an apartment budding known to be a “notorious ‘crack house.’” As a result of Dickerson’s suspicious behavior when he saw the officers observing him, and the community reputation of the building as a haven for cocaine traffic, the officers stopped him and conducted a patdown search. During the search, one of the officers felt a small lump in the front pocket of Dickerson’s jacket. After further manipulation of the lump, the officer decided it was a “lump of crack cocaine in cellophane.” The officer then removed from Dickerson’s pocket a small plastic bag containing one fifth of one gram of crack cocaine. Dickerson was arrested and charged with possession of a controlled substance. Before trial, he moved to suppress the cocaine. Upon the trial court’s denial of his motion, Dickerson was convicted of possession of a controlled substance. However, the conviction was overturned upon the conclusion of the Minnesota Court of Appeals and Supreme Court that the cocaine should have been suppressed. The United States Supreme Court granted certiorari review and affirmed the decision of the Minnesota Supreme Court.
Although concluding that the evidence should have been suppressed, the United States Supreme Court held that contraband detected through the sense of touch during a valid patdown search may be admitted into evidence. In enunciating the “plain feel” doctrine, the Court analogized to the “plain view” doctrine. Specifically, the Court in Dickerson held that
If a police officer lawfully pats down a suspect’s outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect’s privacy beyond that already authorized by the officer’s search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.
Id., 508 U.S. at 375-76; 113 S.Ct. at 2137 (footnote omitted).
In rejecting the contention that “plain feel” is not comparable to “plain view” because the sense of touch is inherently less reliable than the sense of sight, the Court stated:
*494 The very premise of Terry, after all, is that officers will be able to detect the presence of weapons through the sense of touch and Terry upheld precisely such a seizure. Even if it were true that the sense of touch is generally less reliable than the sense of sight, that only suggests that officers will less often be able to justify seizures of unseen contraband. Regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment’s requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures.
508 U.S. at 376, 113 S.Ct. at 2137 (emphasis added).
Based upon the facts of Dickerson, the Court identified the dispositive question, as “whether the officer who conducted the search was acting within the lawful bounds marked by Terry at the time he gained probable cause to believe the lump in respondent’s jacket was contraband.” 508 U.S. at 377, 113 S.Ct. at 2138. Finding that the police officer overstepped the bounds of a search for weapons authorized by Terry, the Court stated:
Here, the officer’s continued exploration of respondent’s pocket after having concluded that it contained no weapon was unrelated to “[t]he sole justification of the search [under Terry: ] ... the protection of the police officer and others nearby.” It therefore amounted to the sort of eviden-tiary search that Terry expressly refused to authorize, and that we have condemned in subsequent eases.
Id., 508 U.S. at 378, 113 S.Ct. at 2139 (internal citations omitted).
Based upon the decision in Dickerson then, seizure of contraband under the “plain feel” doctrine is appropriate if 1) a prior valid reason exists for the intrusion, i.e., the patdown must be permissible under Terry; 2) the contraband is detected while the Terry search for weapons legitimately is still in progress; and, 3) the incriminating nature of the object perceived by the officer’s sense of touch is immediately apparent giving the officer probable cause to believe the object is contraband prior to its seizure. Dickerson, 508 U.S. at 376-77, 113 S.Ct. at 2137; See also Arizona v. Hicks, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); Texas v. Brown, 460 U.S. 730, 741-742, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983); State v. Jones, 103 Md.App. 548, 653 A.2d 1040, 1047-1050 (1995); see generally 3 La-Fave, Search & Seizure § 7.5(b) (3d ed.1996).
Clearly the first two prerequisites are met in this case. For the reasons previously stated the patdown was permissible under Terry. In addition, nothing in this record indicates that the officer exceeded the scope of a valid Terry search for weapons in his patdown of the defendant’s person when he detected the bottle. Compare Minnesota v. Dickerson, supra; State v. Wonders, 23 Kan.App.2d 287, 929 P.2d 792 (1996)(officer continued pat down of defendant’s pocket after he determined that it did not contain a weapon).
Legality of the seizure in this case turns on the third prerequisite. The dispositive issue is whether Officer Blackwell’s tactile perception of the pill bottle gave him probable cause to believe the object he felt was contraband before he seized it. Probable cause exists when the facts and circumstances within the officer’s knowledge are sufficient to warrant a person of reasonable caution in the belief that the item may be contraband. Brown, 460 U.S. at 742, 103 S.Ct. at 1543. Probable cause “does not demand any showing that such a belief be correct or more likely true than false.” Id. In determining whether probable cause exists, courts must consider the totality of the circumstances including the officer’s testimony and factual knowledge based upon prior law enforcement experience. See State v. Rushing, 935 S.W.2d 30, 33 (Mo.banc.1996); see also State v. Trine, 236 Conn. 216, 673 A.2d 1098, 1100 (1996). Courts should not surrender their common sense assessment of the sensory capacities of human touch to an officer’s assertion that he or she “immediately knew” the nature of the object touched. See e.g., Jones v. State, 343 Md. 448, 682 A.2d 248, 252 (1996) (“it’s not just a question of being an expert and coming in and saying the magic words”). The officer’s subjective be *495 lief that the object is contraband is not sufficient unless it is objectively reasonable in light of all the circumstances known at the time of the search. Trine, 673 A.2d at 1109. An officer’s testimony is a factor in determining the legality of a seizure under the plain feel doctrine, but it is not dispositive and does not end a court’s inquiry. Wonders, 929 P.2d at 799.
Applying these principles to the record in this case, a majority of this Court has determined that Officer Blackwell did not have probable cause to believe that the object he felt was contraband, and that he did not have probable cause to believe that the bottle contained contraband. In an affidavit filed as an exhibit to the suppression hearing Officer Blackwell described the patdown of the defendant as follows:
For my protection I immediately identified myself and frisked Bridges for weapons. When I touched his right jacket pocket I immediately recognized a pill bottle, in that pocked, that is used by the majority of crack dealers to hold their crack cocaine. I continued the frisk and found a knife in Bridges’ back pocket. The pill bottle contained crack cocaine. I charged him and also found a small bag of crack cocaine in the same pocket.
In addition, Officer Blackwell testified at the suppression hearing, recounting the discovery of the pill bottle dining the patdown as follows: “[w]hen I was frisking him I felt and immediately felt the pill bottle and knew that it was the kind that a lot of other dealers will use to keep their crack in.”
While Officer Blackwell said that he “immediately recognized” the item as a pill bottle, unless he was clairvoyant, he could not have discerned the contents from merely touching the container. Such a bottle, or one resembling it by touch, may enclose legal medication, candy, pins, film or any number of other small items. Officer Blackwell’s testimony does not specify the objective basis upon which he relied for identification of the container itself or its possible contents as contraband. The record contains little evidence of Officer Blackwell’s experience in drug eases and no evidence as to how he connected the container with the possession of cocaine. Compare, Trine 673 A.2d at 1111-12 (officer testified as to his experience with narcotics); People v. Champion, 452 Mich. 92, 549 N.W.2d 849, 859 (1996) (officer’s testimony about 20 years of experience in narcotics work).
Under the proof in this record, it is evident that it was not immediately apparent to Officer Blackwell that the bottle contained contraband until it was removed from the defendant’s pocket. This, however, is the very type of further manipulation forbidden by Dickerson. See United States v. Ross, 827 F.Supp. at 719 (matchbox); State v. Parker, 622 So.2d 791, 795 (La.App.1993) (matchbox); State v. Abrams, 322 S.C. 286, 471 S.E.2d 716, 718 (1996) (Tylenol bottle); Campbell v. State, 864 S.W.2d 223, 226 (Tex.App.1993) (film canister); Davis v. State, 829 S.W.2d 218, 220 (Tex.Crim.App.1992) (matchbox);[3] contra Champion, 549 N.W.2d at 858-59 (pill bottle in groin); Rushing, 935 S.W.2d at 30 (cylindrical medicine bottle).
Over a quarter of a century ago, the United States Supreme Court warned that “the ‘plain view5 doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.” Coolidge, 403 U.S. at 466, 91 S.Ct. at 2038. This admonition applies equally to the plain feel doctrine. Applying the plain feel doctrine with the exacting limitations stated in Dickerson, it is clear that the warrantless seizure in this case was *496 not constitutionally permissible.[4]

CONCLUSION

A majority of this Court has determined that the initial stop and frisk was justified by reasonable suspicion supported by specific and articulable facts. However, a majority of this Court also concludes that the evidence preponderates against the trial court’s finding that the officer had probable cause to believe the object felt during the frisk was contraband. Consequently, the judgment of the Court of Criminal Appeals upholding the trial court’s denial of the defendant’s motion to suppress is reversed. The defendant’s conviction is vacated, and the charge is dismissed.
DROWOTA and REID, JJ., files separate concurring and dissenting opinions.
HOLDER, J., not participating.

. Rule 37(b)(2)(i), Tenn. R.Crim. P., provides in pertinent part as follows:
(b) An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction: (2) Upon a plea of guilty or nolo contendere if: (i) Defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case....

. The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

. Compare cases where the officer actually felt the contraband itself or felt the contraband through packaging that did not conceal the contents’ nature, e.g., United States v. Craft, 30 F.3d 1044, 1045 (8th Cir.1994) (bulges of heroine packages around defendant’s ankles); United States v. Hughes, 15 F.3d 798, 802 (8th Cir.1994) (“small lumps” of crack cocaine); Trine, 673 A.2d at 1111 (rock of cocaine in pocket); People v. Mitchell, 165 Ill.2d 211, 209 Ill.Dec. 41, 650 N.E.2d 1014, 1024 (1995) (piece of "rock” cocaine inside baggie); State v. Wilson, 112 N.C.App. 777, 437 S.E.2d 387, 389 (1993) (“lumps” in package in breast pocket); Commonwealth v. Dorsey, 439 Pa.Super. 494, 654 A.2d 1086, 1087 (1995) ("lump” in plastic bag); State v. Buchanan, 178 Wis.2d 441, 504 N.W.2d 400, 404 (1993) (plastic bag containing cocaine in waistband).

. The defendant did not contend that the Tennessee Constitution affords greater protection against searches and seizures than does the federal constitution with regard to the plain feel doctrine. The plain feel doctrine as formulated by the United States Supreme Court in Dickerson is consistent with principles enunciated by this Court in interpreting Article I, Section 7. See e.g., State v. Roode, 643 S.W.2d 651, 653 (Tenn.1982). Consequently, that doctrine, with its specific limitations will be applied in appropriate cases in this state.