IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
February 12, 2020 Session

## STATE OF TENNESSEE v. JAMES ROBERT BLACK, JR.

**Appeal from the Circuit Court for Lawrence County**
**No. CR-35387      Stella L. Hargrove, Judge**

_____

### No. M2019-00880-CCA-R3-CD

_____

Defendant, James Robert Black, Jr., was charged in a seven-count indictment returned by the Lawrence County Grand Jury with DUI second offense, DUI per se second offense, reckless driving, violation of the open container law, violation of the child restraint law, driving his vehicle left of the center of the road, and violation of the implied consent law. All the charges were the result of one traffic stop of Defendant by a trooper of the Tennessee Highway Patrol. Defendant filed a motion to suppress all evidence seized on the basis that the trooper made an unconstitutional stop of Defendant's vehicle without probable cause or reasonable suspicion supported by specific and articulable facts that a crime had been, or was about to be, committed. After an evidentiary hearing, the trial court granted the motion. As a result, the charges were dismissed upon motion of the State and the State filed an appeal as of right. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and J. Victoria Haywood, Assistant District Attorney General, for the appellant, State of Tennessee.

Kevin S. Latta, Columbia, Tennessee, for the appellee, James Robert Black, Jr.

# OPINION

## Testimony at Suppression Hearing

Jonathan Pulley, a trooper with the Tennessee Highway Patrol, testified that on August 5, 2017, at approximately 10:57 p.m., he was on patrol as a passenger in a southbound patrol car on Buffalo Road. Another trooper with Trooper Pulley for training purposes was driving. Trooper Pulley's vehicle came upon a pickup truck also driving southbound. Trooper Pulley testified that the pickup truck's driver's side wheels came across the center of the road. Trooper Pulley added that the area where he was on patrol had high DUI activity.

Trooper Pulley testified that a video of the pickup truck was recorded as it was being followed. As the video was played during the hearing, Trooper Pulley provided some narrative. Trooper Pulley acknowledged that video recordings are difficult to observe sometimes because they are fuzzy while the vehicles are moving. He stated it may be hard to see the vehicle cross the center line on the video. According to the transcript, the video recording began at 10:57:49 p.m. and ended after the pickup came to a complete stop at 10:59:30 p.m.

Trooper Pulley testified that the sole reason for stopping the pickup truck, which was driven by Defendant, was because he saw Defendant cross the center line one time.

On cross-examination, Trooper Pulley testified that in training other troopers, he instructs them to always stop a vehicle as soon as a violation of the law is observed. He stated that he did not have a gut feeling that he would find a drunk driver when he first saw Defendant's vehicle. Trooper Pulley added, "Just making stops, that's what it's about . . . . Stop the next one. Stop the next one. [sic] Look beyond the ticket." Trooper Pulley stated that the video clearly shows that Defendant's vehicle went across the center line even though it "may not have been far." The video recording was made an exhibit. Following argument by both parties, the trial court stated as follows:

> THE COURT:    I am going to grant the motion. I know that trooper does a good job but I am going to grant the motion in this case, the motion to suppress.

Subsequently, the trial court entered an order granting Defendant's motion to suppress. The order states:

Defendant moved to suppress all evidence seized as the result of the investigatory stop in Lawrence County, TN on or about the 5th day of August, 2017, as well as any/all results of chemical tests obtained by Search Warrant and all statements written and oral, made by the defendant.

The Motion to Suppress is hereby **GRANTED**

Upon the State's request for an order of *nolle prosequi*, the trial court dismissed all charges against Defendant. The State filed a timely notice of appeal.

**Analysis**

On appeal, the State argues that the trial court erred by granting Defendant's motion to suppress. The State also correctly pointed out that the trial court failed to make findings of fact or credibility determinations upon which to base its decision granting the motion. However, in its brief, the State urges this court to just review the video recording entered as an exhibit and draw its own conclusions, which we are entitled to do under certain circumstances. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000). In such situations when the trial court fails to make findings of fact which are specific to the issues, this court may review the record to determine the preponderance of the evidence. *Fields v. State*, 40 S.W.3d 450, 457 n. 5 (Tenn. 2001). In *Fields*, our supreme court, in the cited passage, stated that the holding in *Binette* was applicable "when the only evidence considered . . . was that of a video tape." *Id.* (parenthetical to citation of *Binette*). In *Binette*, also a DUI case wherein the State justified the stop in part because the defendant had driven across the center line of the road, the arresting officer did not testify, but the videotape of his recording of defendant's vehicle was entered as an exhibit. Based solely upon the videotape, the trial court denied the defendant's motion to suppress. The defendant reserved a certified question of law in his guilty plea and appealed. The Court of Criminal Appeals affirmed. Our supreme court granted the defendant's application to appeal and reversed the lower courts, the conviction was vacated, and the DUI charge was dismissed. *Binette*, 33 S.W.3d at 216. The court held,

Accordingly, we hold that when a trial court's findings of fact at a suppression hearing are based on evidence that does not involve issues of credibility, a reviewing court must examine the record de novo without a presumption of correctness.

*Id.* at 218.

The State urges that as long as the trooper had reasonable suspicion, based upon specific articulable facts, that defendant had committed or was about to commit a criminal offense, the stop was constitutional. The State relies upon the trooper's reasonable suspicion that Defendant had violated Tennessee Code Annotated section 55-8-115(a), which is a class C misdemeanor. That statute provides as follows:

**55-8-115. Driving on right side of roadway – Exceptions.**

    (a)    Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway, except as follows:

        (1)    When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

        (2)    When the right half of a roadway is closed to traffic while under construction or repair;

        (3)    Upon a roadway divided into three (3) marked lanes for traffic under the applicable rules thereon; or

        (4)    Upon a roadway designated and signposted for one-way traffic.

After oral argument in this case, this court entered an order directing the trial court to supplement the appellate record with findings of fact as mandated by Tennessee Rule of Criminal Procedure 12(e). ("When factual issues are involved in deciding a motion, the court shall state its essential findings on the record.").

The trial court filed the order supplementing the appellate record. The trial court's findings of fact included an observation that Trooper Pulley testified that Defendant's wheels crossed the center line. However, while acknowledging that Trooper Pulley "is always a good, reliable witness before the Court," the trial court found that he was not "adamant" in his testimony and that Trooper Pulley "simply submitted all issues concerning the stop to the Court."

By simply quoting Trooper Pulley's testimony in the context that it was done, the trial court did **not** make a finding of fact that Defendant had crossed the center line. "Adamant" is defined as "utterly unyielding in attitude or opinion; inflexible." WEBSTER'S COLLEGE DICTIONARY (1991). Thus, the trial court found that in this case, Trooper Pulley's demeanor and sureness of what he thought he observed was not strong.

- 4 -

The trial court made a specific finding of fact that "Defendant was weaving some, but was staying within his lane of travel." By making an implicit finding of fact that Trooper Pulley's testimony that Defendant crossed the center line was not, in this particular case, credible enough to find that Defendant crossed the center line, this court cannot simply review the videotape to make our own *de novo* review. *See Binette*, 33 S.W.3d at 217 (reviewing findings of fact at a suppression hearing under a purely de novo standard when the only evidence considered by the trial court was that of a videotape).

On appellate review of suppression issues, the prevailing party "is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence." *State v. Talley*, 307 S.W.3d 723, 729 (Tenn. 2010) (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). Questions about "the assessment of witness credibility, the weight and value of evidence, and the resolution of evidentiary conflicts are entrusted to the trial court" as the trier of fact. *State v. Meeks*, 262 S.W.3d 710, 722 (Tenn. 2008) (citing *State v. Scarborough*, 201 S.W.3d 607, 615 (Tenn. 2006)). When the trial court "makes findings of fact in the course of ruling upon a motion to suppress, those findings are binding on appeal unless the evidence in the record preponderates against them." *Id*. (citing *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007)). Conversely, a trial court's conclusions of law along with its application of the law to the facts are reviewed de novo without any presumption of correctness. *Id*. (citing *State v. Hayes*, 188 S.W.3d 505, 510 (Tenn. 2006)).

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution guarantee the right to be free from unreasonable searches and seizures. A vehicle stop and detention of the vehicle's occupants constitutes a seizure under both constitutions. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *Binette*, 33 S.W.3d at 218. In the context of a traffic stop, a person is seized when the officer activates the cruiser's blue lights. *Binette*, 33 S.W.3d at 218. Generally, "under both the federal and state constitutions, a warrantless search or seizure is presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 630 (Tenn. 1997). The State has the burden to demonstrate, by a preponderance of the evidence, that a warrantless search passes constitutional muster. *State v. Harris*, 280 S.W.3d 832, 839 (Tenn. Crim. App. 2008).

A warrant is not required for an investigatory stop "when the officer has a reasonable suspicion, supported by specific and articulable facts, that a criminal offense has been or is about to be committed." *State v. Bridges*, 963 S.W.2d 487, 492 (Tenn. 1997); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Binette*, 33 S.W.3d at 218; *Yeargan*,

- 5 -

958 S.W.2d at 630. Reasonable suspicion is a lower standard of proof than probable cause, but it must be more than the officer's "inchoate and unparticularized suspicion or hunch.'" *State v. Hanning*, 296 S.W.3d 44, 49 (Tenn. 2009) (quoting *State v. Day*, 263 S.W.3d 891, 902 (Tenn. 2008)). Our supreme court has explained that reasonable suspicion is "a particularized and objective basis for suspecting the subject of a stop of criminal activity." *Binette*, 33 S.W.3d at 218. Reasonable suspicion exists when "specific and articulable facts . . . taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

In *State v. Brown*, 294 S.W.3d 553 (Tenn. 2009), an appeal from denial of a motion to suppress in a certified question of law, our supreme court stated:

> Although we are hampered in our analysis by the lack of any specific findings by the trial court regarding the manner in which the package was opened, *the trial court implicitly accredited Trooper Hoppe's testimony in denying the motion to suppress*. Trooper Hoppe testified that he peeled a corner up where the package was taped and smelled the odor of cocaine. Peeling up tape on the corner of a package could hardly be categorized as a destructive opening.

*Id*. at 565. (Emphasis added).

If an appellate court is permitted, under certain circumstances, to conclude the trial court implicitly accredited an officer's testimony by *denying* a motion to suppress, it is both logical and consistent that an appellate court can conclude that a trial court implicitly did *not* accredit an officer's testimony by *granting* the motion to suppress. In this case, this conclusion is supported by the trial court's specific finding that Trooper Pulley was not "adamant" in his testimony.

The trial court reviewed the testimony of the only witness and made an implicit finding that his testimony was not credible in this case as to whether Defendant crossed the center line before the stop was initiated by the patrol car's blue lights being turned on. The trial court found that the videotape showed that while Defendant weaved, he stayed within his lane of travel. Even if we could make our ruling based solely upon our view of the videotape, we would be unable to conclude that the trial court erred by granting the motion to suppress.

The State is not entitled to relief in this appeal.

**CONCLUSION**

The judgment of the trial court granting the motion to suppress is affirmed. Likewise, the trial court's order dismissing all counts in the indictment, done upon the State's request, is affirmed. The trial court is directed to enter a judgment of dismissal for each count of the indictment.

_____
THOMAS T. WOODALL, JUDGE