IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 9, 2002 Session

## STATE OF TENNESSEE v. LILLIE FRAN FERGUSON

**Direct Appeal from the Circuit Court for Madison County**
**No. 99-938      Roger A. Page, Judge**

---

**No. W2002-00638-CCA-R3-CD  - Filed November 19, 2002**

---

After entering a guilty plea, the defendant reserved certified questions for review: (1) whether the
Terry search was justified, and (2) whether the incriminating nature of the contraband was
immediately apparent. We hold that the officer lacked reasonable suspicion to justify a Terry frisk
and that the object felt was not immediately apparent as contraband. We reverse and dismiss the
defendant's conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and
Dismissed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and
ALAN E. GLENN, JJ., joined.

Lloyd R. Tatum, Henderson, Tennessee, for the appellant, Lillie Fran Ferguson.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General;
James G. (Jerry) Woodall, District Attorney General; and James W. Thompson, Assistant District
Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant, Lillie Fran Ferguson, was indicted for possession of cocaine with intent to
sell and/or deliver, possession of drug paraphernalia, and failure to obey a stop sign. After the
defendant's motion to suppress the evidence was denied, she entered a guilty plea to possession of
less than .5 grams of cocaine with intent to deliver, Tenn. Code Ann. § 39-17-417, a Class C felony.
The plea bargain was for a four-year suspended sentence, with other conditions. Two certified
questions of law were properly reserved, pursuant to Tennessee Rules of Criminal Procedure
37(b)(2). The certified questions are: (1) whether a Terry search was justified under the
circumstances, and (2) whether the incriminating nature of the contraband was immediately apparent.
The defendant also pled guilty to failure to obey a stop sign, which was not appealed.

## Background

On August 5, 1999, about 8:00 or 9:00 p.m., Officer Jeff Sheppard of the Jackson Police Department was performing surveillance on a residence anonymously reported to be a "crack house." The officer had within the last two days made an arrest of two men for possession of crack cocaine after they left the same residence. The officer observed the defendant, Lillie Fran Ferguson, a sixty-one-year-old woman, and another female companion park their vehicle and enter the residence. After five to ten minutes, the women returned and left in the vehicle. Officer Sheppard followed and, shortly thereafter, observed the defendant fail to obey a stop sign. He then initiated a stop and requested the defendant's driver's license. When the defendant did not immediately produce the license, the officer asked her to step out of the car and performed a pat down or Terry frisk. During this time, the defendant produced her license. The officer testified that it was his policy during traffic stops to pat down everyone he thought might have a weapon.

Pursuant to the pat down, the officer felt what he was "99% sure" was a crack pipe in the defendant's right front pants pocket. He described it as an aluminum pipe, broken from a car antenna, with little edges that were sharp and bent out. Contemporaneously with the frisk, he questioned the defendant as to whether she had a crack pipe and if she had crack on her. She replied affirmatively to both questions and produced the respective contraband items. A search of the vehicle produced another crack pipe with one or two crack cocaine rocks from under the passenger seat.

## Analysis

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence, and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this Court reviews de novo. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

A warrantless search is presumed unreasonable under both the federal and Tennessee state constitutions, and evidence seized from the warrantless search is subject to suppression unless the State demonstrates by a preponderance of the evidence that the search was "conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." State v. Simpson, 968 S.W.2d

776, 780 (Tenn. 1998);  see Coolidge v. New Hampshire, 403 U.S. 443, 454-55, 91 S. Ct. 2022, 2032, 29 L. Ed. 2d 564 (1971).

Under Tennessee Code Annotated section 40-7-118, an officer who witnesses certain misdemeanors is required to cite and release the offender as opposed to effecting a custodial arrest. State v. Walker, 12 S.W.3d 460 (Tenn. 2000).  There are eight exceptions to the "cite and release" requirement contained in the statute, none of which are applicable to this case.  Therefore, a citizen has a presumptive right to be cited and released for failure to obey a stop sign, rather than being placed under custodial arrest.

However, the Fourth Amendment permits a protective frisk prior to release where a law enforcement officer has reasonable suspicion that the suspect is armed.  Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992); State v. Winn, 974 S.W.2d 700, 703 (Tenn. Crim. App. 1998).

> In determining whether a police officer's reasonable suspicion is supported by specific and articulable facts, a court must consider the totality of the circumstances.  United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L. Ed. 2d 621, 629 (1981).  This includes, but is not limited to, objective observations, information obtained from other police officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders.  Id., 449 U.S. at 418, 101 S.Ct. at 695, 66 L. Ed. 2d at 629.  A court must also consider the rational inferences and deductions that a trained police officer may draw from the facts and circumstances known to him. Terry, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed. 2d at 906.

Watkins, 827 S.W.2d at 294.

The officer had approximately five to six months experience on the Jackson Metro Narcotics Unit and eight years total experience in police work and arrests involving drug offenders.  Based on his experience, he testified that, "My experiences with people that are involved in the narcotics trade or use tend to have some type of weapon on them."  According to the officer, less than two minutes had elapsed since the defendant had emerged from an alleged crack house when he performed the frisk.  On cross-examination, when asked if he frisked everybody he stopped, the officer answered: "Everybody that I have reason to think might have a weapon, yes, sir."  Officer Sheppard further testified that on routine traffic stops such as speeding or running a stop sign, he may not perform a frisk.

Frisks have been deemed reasonable when the suspected crime typically involves the use of a weapon; for example, a suspicion of robbery, burglary, rape, assault with a weapon, homicide, and large scale narcotics trafficking.  Winn, 974 S.W.2d at 703.  If the suspected crime, as here, does not typically involve the use of a weapon, then "other circumstances" must be present.  Sibron v. New York, 392 U.S. 40, 74, 88 S. Ct. 1889, 1907, 20 L. Ed. 2d 917 (1968); Winn, 974 S.W.2d at 703-704.

This Court has previously considered a plethora of "other circumstances" as follows:

> [A] characteristic bulge in the suspect's clothing; observation of an object in the pocket which might be a weapon; an otherwise inexplicable sudden movement toward a pocket or other place where a weapon could be concealed; an otherwise inexplicable failure to remove a hand from a pocket; backing away by the suspect under circumstances suggesting he was moving back to give himself time and space to draw a weapon; awareness that the suspect had previously been engaged in serious criminal conduct; awareness that the suspect had previously been armed; [and] discovery of a weapon in the suspect's possession . . . .

Winn, 974 S.W.2d at 704. LaFave, Search and Seizure, § 9.5(a) (3d ed. 1996 & Supp. 1997) (footnotes and citations omitted).

The record is devoid of any "other circumstances" such as furtive movements, suspicious bulges, or prior knowledge of the defendant at the time of the stop and seizure. The State posits that the officer believed he was subjected to a "heightened level of danger" when stopping the defendant, based on defendant's just leaving an alleged crack house and that the officer had, two days prior, arrested two other men for cocaine possession after they left the same residence. While mindful of law enforcement officers' need to ensure their safety when confronting suspects, under these facts, we cannot discern a reasonable and articulable suspicion to justify a Terry frisk.

The defendant further complains that the crack pipe's incriminating nature was not immediately apparent as contraband. The defendant relies upon Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993), and State v. Bridges, 963 S.W.2d 487 (Tenn. 1997). Under this authority, the "plain feel" doctrine allows a warrantless search and seizure if:

> (1) a prior valid reason exists for the intrusion, i.e., the pat down must be permissible under Terry;
> (2) the contraband is detected while the Terry search for weapons legitimately is still in progress; and
> (3) the incriminating nature of the object perceived by the officer's sense of touch is immediately apparent giving the officer probable cause to believe the object is contraband prior to its seizure.

Having held that the frisk in this case was not justified by articulable and reasonable suspicion, the intrusive frisk would fail on that basis. However, for completeness of review we will analyze the defendant's second issue on the assumption of a valid Terry frisk.

State v. Bridges contains a succinct summary as to when an officer's tactile perceptions give probable cause to believe the item is contraband prior to seizure:

> Probable cause exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that the item may be contraband. Brown, 460 U.S. at 742, 103 S.Ct. at 1543. Probable cause "does not demand any

showing that such a belief be correct or more likely true than false."
Id. In determining whether probable cause exists, courts must
consider the totality of the circumstances including the officer's
testimony and factual knowledge based upon prior law enforcement
experience. See State v. Rushing, 935 S.W.2d 30, 33 (Mo.banc.
1996); see also State v. Trine, 236 Conn. 216, 673 A.2d 1098, 1100
(1996). Courts should not surrender their common sense assessment
of the sensory capacities of human touch to an officer's assertion that
he or she "immediately knew" the nature of the object touched. See
e.g., Jones v. State, 343 Md. 448, 682 A.2d 248, 252 (1996) ("it's not
just a question of being an expert and coming in and saying the magic
words"). The officer's subjective belief that the object is contraband
is not sufficient unless it is objectively reasonable in light of all the
circumstances known at the time of the search. Trine, 673 A.2d at
1109. An officer's testimony is a factor in determining the legality of
a seizure under the plain feel doctrine, but it is not dispositive and
does not end a court's inquiry. Wonders, 929 P.2d at 799.

963 S.W.2d at 494-95 (Tenn. 1997).

Officer Sheppard described the object as a pipe made of aluminum, broken from a car antenna, with little edges, sharp and bent out. The officer, in his words, felt "99% sure" it was a crack pipe upon feeling it. Based upon this testimony, as well as the experience of Officer Sheppard, we conclude that, under the "plain feel" doctrine, he was justified in his belief that this object was a crack pipe. However, since we have concluded that his pat down of the defendant was not justified, this belief cannot justify the unlawful search.

Having concluded that the officer lacked reasonable suspicion to justify a Terry frisk, it is necessary to suppress the evidence seized.

### Conclusion

After a review of the record, we reverse and dismiss the defendant's conviction of possession of less than .5 grams of cocaine with intent to deliver and remand to the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE